UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Martin S. Rood,<br><br>    Plaintiff<br><br>v.<br><br>Liberty Insurance Underwriters, Inc., et al.,<br><br>    Defendant | 2:16-cv-002586-JAD-NJK<br><br>**Order Granting Defendant's Motion to Dismiss**<br><br>[ECF No. 8] |

Plaintiff Martin Rood invested nearly a million dollars into a real estate development. The development eventually failed, and Rood discovered that the appraisal he relied on when deciding to invest had been exaggerated. So he sued the appraisers and received a judgment against them. One of those appraisers was insured by defendant Liberty Insurance Underwriters, Inc. ("Liberty"). But Liberty refused to pay the judgment against the appraiser because it believed that two exclusions in its policy barred coverage. Rood received an assignment of the appraiser's rights against Liberty and now stands in the appraiser's shoes to sue Liberty for breach of contract, bad faith, and unfair claims practices.

Liberty moves to dismiss all of Rood's claims. It contends that its policy exclusions bar coverage as a matter of law, that Rood's bad faith claims are untimely, and that he has not alleged a plausible unfair-practices claim. Liberty has not yet established that its policy exclusions apply, so I do not dismiss Rood's breach of contract claim. But I dismiss his other two claims. Rood waited too long to bring his tort claim for bad faith. And he did not even oppose Liberty's arguments related to the unfair-practices claim. I thus grant in part and deny in part Liberty's motion to dismiss.

## Background

In 2006, Hallock Ryno, Inc. loaned money to Cielo Vista, LLC, so that Cielo Vista could create a new housing development on a large tract of land that it owned.[1] Hallock then solicited investors to purchase an interest in the loan.

Hallock sent potential investors, including Rood, an offering circular with the investment terms and an appraisal of the property. The appraisal valued the property at well over $5 million.[2] Rood relied on this appraisal to invest almost $1 million for a 50% interest in Hallock's loan.[3] Other appraisals valued this property at less than $3 million, but Rood was never given that information.[4]

When the housing development flopped, Rood sued Hallock and the appraisers.[5] One of the appraisers, Jack Gillespie, had a professional liability insurance policy with Liberty.[6] Gillespie asked Liberty to defend him, but it refused, citing two policy exclusions that it believed barred coverage.[7] Rood eventually succeeded in that case, receiving a judgment against Gillespie for $647,000.[8] Gillespie then assigned Rood all of his claims against Liberty.[9]

## Discussion

**A.    Motion-to-dismiss standards**

A properly pleaded complaint must contain a "short and plain statement of the claim showing

---

[1] These facts come from the plaintiff's complaint and the documents incorporated within it. I assume they are true only for purposes of this motion. ECF No. 1 at 2.

[2] ECF No. 8-8.

[3] ECF No. 1 at 2–5.

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.* at 5.

that the pleader is entitled to relief."[10] While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."[11] "Factual allegations must be enough to rise above the speculative level."[12] To survive a motion to dismiss, a complaint must "contain [] enough facts to state a claim to relief that is plausible on its face."[13]

Liberty relies on several documents outside of the complaint in moving to dismiss. Generally I may consider only allegations in the complaint at the dismissal stage.[14] But I may also consider documents that the complaint incorporates by reference if the plaintiff "refers extensively to the document or the document forms the basis of the plaintiff's claim."[15] Merely mentioning a document in the complaint is not enough.[16]

**B.    Rood plausibly alleges his breach of contract claim.**

Liberty offers only one argument against Rood's breach of contract claim: coverage was excluded under provisions in Liberty's policy. Interpreting contract terms is generally a job for the court.[17] But when an interpretation turns on underlying factual disputes, those fact questions may be submitted to a jury.[18] "If a provision in an insurance contract is unambiguous, a court will interpret and enforce it according to the plain and ordinary meaning of its terms."[19] But where a term is

---

[10] FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12] *Twombly*, 550 U.S. at 555.

[13] *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).

[14] *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)

[15] *Id.*

[16] *Id.* (holding that a document could not be considered by the district court because it was only briefly mentioned in the complaint).

[17] *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014).

[18] *Id.*

[19] *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011).

ambiguous, it is generally construed in favor of the insured and against the insurer.[20] "[W]hether an insurance policy [term] is ambiguous turns on whether it creates reasonable expectations of coverage as drafted."[21] Liberty relies on two exclusions: Exclusion L and Exclusion N.

### 1.  Exclusion L

The first exclusion that Liberty relies on is Exclusion L of the policy, which excludes coverage for an appraisal done for a "real estate syndicate, real estate investment trust or limited partnership which utilizes the Insured's Appraisal or report . . . to solicit investors."[22] In other words, Liberty's policy doesn't cover an appraisal done for certain real estate companies if those companies use the appraisal to solicit investors.

Liberty contends that the allegations in the complaint and the documents the complaint refers to make clear that the appraisal was done for a "real estate trust" to "solicit investors" in the development, so the exclusion is met. Although it is true that the complaint suggests that the appraisal was used to solicit investors, there are no allegations from which I can determine that Hallock, the company using the appraisal, was a "real estate syndicate, real estate investment trust, or limited partnership." Liberty argues that Hallock is a real estate trust, but points to no allegations in the complaint or the documents it incorporates to establish that this is so.

The only information I have about Hallock is that it loaned money to a third party. Does loaning money to a third party make Hallock a "real estate investment trust" merely because the recipient of the loan plans to build a residential development?[23] Liberty offers no authority

---

[20] *Grand Hotel Gift Shop v. Granite State Ins. Co.*, 839 P.2d 599, 604 (Nev. 1992) (stating that ambiguous or unclear terms in an insurance contract are resolved in favor of the insured).

[21] *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1157 (Nev. 2004).

[22] ECF No. 8-2 at 2–3.

[23] Black's Law Dictionary defines a real estate investment trust as "A company that invests in and manages a portfolio of real estate, with the majority of the trust's income distributed to its shareholders." Black's Law Dictionary (10th ed. 2014). Even if I were to take this meaning of the term, there are no allegations establishing that Hallock manages a portfolio of real estate or that the majority of its profits go to investors. The complaint simply alleges that Hallock loaned a company money and asked investors to buy an interest in the loan.

suggesting this is so.[24] Because I cannot conclude from the factual allegations before me that Exclusion L applies, at this nascent stage, I cannot say that Exclusion L bars coverage here.

   **2.    Exclusion N**

If Exclusion L does not apply, Liberty contends that Exclusion N bar this claim. Exclusion N excludes coverage for appraisals done on "vacant land" that is slated to be a "multiple unit single family housing development, condominium development, co-operative housing developments or apartment developments consisting of 10 units or more."[25] Liberty has similar troubles here: it has not established what these terms mean, and even if it had, there are insufficient factual allegations in the complaint for me to conclude that these terms are met.

The documents incorporated into the complaint make clear that the tract of land that the appraisal analyzed was vacant. But although Liberty suggests that the land was to be developed into a "multiple unit single family housing development," it offers no authority or allegations from which I can determine what this term means. Instead, it simply says that because the land was to be used for more than ten residential units, it must be a "multiple unit single family housing development."

But even if I were certain of what the policy means by a multiple unit single family housing development, I cannot conclude that this exclusion is triggered here. The only information I have about the proposed development is a stray sentence in the appraisal that says that the land was for a "27-story mixed-used development including 414 residential units and 32,970 square feet of commercial space."[26] Construing all inferences in Rood's favor, I cannot determine from this sentence what kind of homes were even contemplated. It may be that the development included townhouses, duplexes, or any number of other sorts of homes. Without clear facts indicating what was to be developed at the site, I cannot yet say that Exclusion N applies. I thus deny Liberty's

---

[24] Liberty also points to language in other documents to support its contention that Hallock is a real estate trust. This language does not conclusively establish that Hallock was a real estate trust, it simply uses some trust terminology in explaining the deed of trust related to the property. More importantly, several of the documents that Liberty relies on are never mentioned in the complaint, much less "referenced extensively" so that they would be incorporated by reference.

[25] ECF No. 8-2.

[26] ECF No. 8-8 at 2.

motion to dismiss the breach-of-contract claim because I cannot tell on this record whether these exclusions apply.

## C. Rood's tort claim for bad faith is untimely.

Liberty next argues that Rood's bad-faith claim is barred by Nevada's statute of limitations. In Nevada, claims arising from obligations imposed by law are governed by Nevada's four-year statute of limitations.[27] Claims arising from a contract are governed by a six-year statute of limitations.[28] Generally, an "insurer's duty to deal in good faith is an obligation imposed by law and . . . does not arise from the terms of the insurance contract."[29] Bad-faith tort claims are thus subject to Nevada's four-year statute of limitations.[30]

Liberty denied the appraiser's claim back in June 2012, but Rood did not file this lawsuit until November 2016. Rood therefore missed the four-year deadline to file a bad-faith tort claim by several months. Rood contends that this claim should be construed as a contract action and governed by Nevada's six-year statute of limitations. But Rood's bad-faith claim alleges that Liberty owed its insured a "duty" of "good faith" and committed a "*tortious* breach" of that duty by not acting "reasonabl[y]."[31] Even construing the complaint in a light most favorable to Rood, he obviously framed his bad-faith claim as one sounding in tort, not contract. I dismiss this claim as time-batted.

## D. Rood's unfair-practice claims fails.

Rood does not oppose Liberty's motion to dismiss his unfair-practices claim. Under our local rules, Rood thus consents to dismissal of this claim.[32] Even if he had opposed the motion to dismiss this claim, the complaint is empty of any specific facts plausibly alleging that Liberty unreasonably handled a claim. I therefore dismiss this claim as well.

---

[27] NRS 11.190(2)(c); *Davis v. State Farm Fire & Cas. Co.*, 545 F. Supp. 370, 372 (D. Nev. 1982).

[28] NRS 11.190(1)(b).

[29] *Davis*, 545 F. Supp. at 372.

[30] *Id.*

[31] ECF No. 1 at 6 (emphasis added).

[32] L.R. 7-2(d).

**Conclusion**

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's **motion to dismiss [ECF No. 8] is GRANTED IN PART. I decline to dismiss Rood's first cause of action for breach of contract. But Rood's second cause of action for bad faith and third cause of action for unfair-claim practices are dismissed.**

IT IS FURTHER ORDERED **that the stay [ECF No. 13] is lifted**, and the parties have 14 days to file their join statement regarding whether and how discovery should proceed.

Dated this 6th day of July, 2017

_____
Jennifer A. Dorsey
United States District Judge